UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 04-80099-CIV-HURLEY/HOPKINS

RICHARD EXPOSITO, on behalf of
himself and all other similarly situated,

     Plaintiff,

v.

EQUIFAX, INC.
and NAVIANT, INC.

     Defendants

_____/



**JOINT MOTION FOR APPROVAL
OF SETTLEMENT AGREEMENTS**

The plaintiff, Richard Exposito, together with all opt-in plaintiffs and the defendants, Equifax Inc. and Naviant, Inc. n/k/a Equifax eMarketing Solutions, Inc., file this Joint Motion for Approval of Settlement Agreements, and respectfully state as follows:

1.     This is an action filed under the Fair Labor Standards Act ("FLSA") in which Exposito and sixty-eight (68) additional opt-in plaintiffs sought recovery for overtime allegedly due and owing to them. Defendants denied the plaintiffs' allegations and disputed their entitlement to overtime and the validity of their claims.

2.     The parties have reached a resolution of this matter, and each opt-in plaintiff has entered into a confidential settlement agreement. All sixty-nine (69) settlement agreements are attached hereto as Exhibit A. Because of the nature of the

plaintiffs' claims, each settlement agreement requires Court approval in order to become effective. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352 (11th Cir. 1982).

3.       Each individual claim was resolved on an individualized basis utilizing a mathematical formula incorporating each individual's length of employment and hourly pay rate.   Accordingly, all of the plaintiffs are receiving different amounts in the settlement, each of which is fair with respect to their individual circumstances.   Each agreement reflects the exact amount each opt-in plaintiff is receiving, as well as how much the plaintiffs' attorneys are receiving from each claim.

4.       In order to avoid the uncertainties of litigation and the attorneys' fees associated with this type of collective action, the parties negotiated a resolution of the matter.   Importantly, throughout the entirety of the resolution process, all sixty-nine (69) plaintiffs were represented by competent counsel with significant experience in this area of law.   Defendants were also represented by counsel throughout this process.

5.       As stated, each settlement is premised upon a mathematical formula giving each plaintiff credit for a fair and reasonable amount of overtime hours every week during each employee's term of employment and applying each individual's hourly rate to determine the amount of the settlement.   On top of that, a multiplier was added to account for possible liquidated damages.   Additionally, a payment of $50,000.00 to cover the plaintiffs' attorneys' fees was included in the overall settlement and apportioned equally to each agreement.   Importantly, each plaintiff acknowledged in his or her agreement that he or she was being fully compensated for all overtime, back wages and liquidated damages owed.

6.    Accordingly, the parties therefore jointly request that the Court enter an Order approving the settlement agreements, so that the parties may then file a joint stipulation of dismissal with prejudice and conclude this matter.

Respectfully Submitted,

Dated: October 14, 2004

By: _____
Joseph M. Maus
(Fla. Bar No. 983373)
Charles H. Bechert, III
(Fla. Bar No. 985971)
Maus & Lawlor, L.L.C. &
Charles H. Bechert, III, P.A.
750 East Sample Road
Building #2, Suite 102
Pompano Beach, Florida 33064
Telephone:    (954) 784-6310
Facsimile:    (954) 784-6313

Attorneys for Plaintiff

By: _____
Steven A. Siegel
(Fla. Bar No. 497274)
James C. Polkinghorn
(Fla. Bar No. 0376892)
FISHER & PHILLIPS LLP
450 East Las Olas Boulevard, Suite 800
Fort Lauderdale, Florida 33301
Telephone:    (954) 525-4800
Facsimile:    (954) 525-8739

Attorneys for Defendants

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) ROSS APPLEMAN. an individual, together with his heirs, agents, legal representatives. successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors. contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 1 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

**EXHIBIT**

**A**



EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Two Thousand Six Hundred Eighty-Two Dollars and Sixty-Nine Cents ($2,682.69), payable to Ross Appleman, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Two Thousand Twelve Dollars and Two Cents ($2,012.02), payable to Ross Appleman; and

(c)    Payment in the amount of One Thousand Nine Hundred Thirty-One Dollars and Twenty-Five Cents ($1,931.25), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement. EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement. Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

         8/18/04

ROSS APPLEMAN      Date:

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**


By:_____

      John Chandler      Date:

      Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

8/18/04

ROSS APPLEMAN          Date:

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  4/22/04

John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA          )
                          )
COUNTY OF _Broward_       )

Before me, the undersigned notary public, on this date personally appeared ROSS APPLEMAN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this __13__ day of _August_____, 2004.



_____
Notary Public in and for
the State of Florida

Signer identified by:

☑ Personal Knowledge; or

☐ Production of Identification

____Florida Drivers Licen.____
Type of Identification Produced

My Commission Expires:

___

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) TERRY BAKER, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 2 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

---

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of One Thousand Three Hundred Eighty-Four Dollars and Sixty-Two Cents ($1,384.62), payable to Terry Baker,  less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of One Thousand Thirty-Eight Dollars and Forty-Six Cents ($1,038.46), payable to Terry Baker, and

(c)   Payment in the amount of One Thousand Three Hundred Sixty-Three Dollars and Thirty-Four Cents ($1,363.34), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 3

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                     PAGE 4

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/9/04

TERRY BAKER        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

        John Chandler          Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                    **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/9/04

TERRY BAKER        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   9/22/04
    John Chandler       Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA            )
                           )
COUNTY OF _Broward_        )

Before me, the undersigned notary public, on this date personally appeared TERRY BAKER, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that. he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _9_ day of _August_, 2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) SHELDON BIRMAN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 3 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Four Thousand Thirty-Nine Dollars and Sixty-Five Cents ($4,039.65), payable to Sheldon Birman, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Three Thousand Twenty-Nine Dollars and Seventy-Four Cents ($3,029.74), payable to Sheldon Birman, and

(c)    Payment in the amount of Two Thousand Five Hundred Twenty-Four Dollars and Ninety-Two Cents ($2,524.92), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.   This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.   EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.   EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.   EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.   Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   Aug 9, 2004
SHELDON BIRMAN      Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff


                              Equifax Inc. and Equifax eMarketing Solutions,
                              Inc. f/k/a Naviant, Inc.



                              By:_____
                                  John Chandler      Date:

                                  Corporate Secretary, Equifax Inc. and
                                  Equifax eMarketing Solutions, Inc. f/k/a
                                  Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  Aug 9, 2004
SHELDON BIRMAN      Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions,
Inc. f/k/a Naviant, Inc.

By: _____  9/22/04
John Chandler      Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE

STATE OF FLORIDA                     )
                                     )
COUNTY OF _Broward_                  )

Before me, the undersigned notary public, on this date personally appeared SHELDON

BIRMAN, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that he has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _9_ day of _August_,

2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_FL Drivers License_
Type of Identification Produced

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

My Commission Expires:

SETTLEMENT AGREEMENT AND RELEASE                          PAGE 7

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) MATTHEW BLOOM, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 4 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

_MLB_

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Four Thousand One Hundred Fifty-Three Dollars and Eighty-Five Cents ($4,153.85), payable to Matthew Bloom, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Three Thousand One Hundred Fifteen Dollars and Thirty-Eight Cents ($3,115.38), payable to Matthew Bloom, and

(c)   Payment in the amount of Two Thousand Five Hundred Seventy-Four Dollars and Eighty-Eight Cents ($2,574.88), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

_M LB_
EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

*MCb*

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

M L O
EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

*MLB*

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/11/04
MATTHEW BLOOM      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler        Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                          PAGE 6

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/11/04
MATTHEW BLOOM        Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

                    Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

                    By: _____  9/22/04
                        John Chandler        Date:

                    Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA         )

                              )

COUNTY OF Broward    )

        Before me, the undersigned notary public, on this date personally appeared MATTHEW BLOOM, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

        SUBSCRIBED AND SWORN TO BEFORE ME this 11 day of August, 2004.

 

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                              **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOHN BOWMAN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 5 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)     Payment by a single check in the amount of Four Thousand Five Hundred Sixty-Nine Dollars and Twenty-Three Cents ($4,569.23), payable to John Bowman, less applicable withholding and deductions; and

(b)     Payment by a single check in the amount of Three Thousand Four Hundred Twenty-Six Dollars and Ninety-Two Cents ($3,426.92), payable to John Bowman, and

(c)     Payment in the amount of Two Thousand Seven Hundred Fifty-Six Dollars and Sixty-One Cents ($2,756.61), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                              PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/9/04
JOHN BOWMAN      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
      John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.   If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

JOHN BOWMAN      Date: 8/9/04

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions,
Inc. f/k/a Naviant, Inc.**

By:      John Chandler      Date: 9/22/04

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

STATE OF FLORIDA            )
                           )
COUNTY OF  Broward         )

Before me, the undersigned notary public, on this date personally appeared JOHN BOWMAN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this  9  day of  August,

2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

FL Drivers License
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                      **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) VERNELL BURRIS, JR., an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 6 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Seven Hundred Seventy-Eight Dollars and Eighty-Five Cents ($778.85), payable to Vernell Burris, Jr., less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Five Hundred Eighty-Four Dollars and Thirteen Cents ($584.13), payable to Vernell Burris, Jr., and

(c)   Payment in the amount of One Thousand Ninety-Eight Dollars and Thirty-Two Cents ($1,098.32), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.   This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.   EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.   EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.   EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.   Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:   EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/19/04
VERNELL BURRIS, JR.      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
     John Chandler          Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

---

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/19/04
VERNELL BURRIS, JR.   Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____   9/22/04
John Chandler   Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA            )
                           )
COUNTY OF _____  )

Before me, the undersigned notary public, on this date personally appeared VERNELL BURRIS, JR., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 19th day of August, 2004.

KATHERINE RENDON
MY COMMISSION # DD 329449
EXPIRES: June 15, 2008
Bonded Thru Notary Public Underwriters

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☐ Production of Identification

_____
Type of Identification Produced

My Commission Expires:

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JANET CANDO-LOTHIAN, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 7 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Eight Hundred Forty-Eight Dollars and Eight Cents ($848.08), payable to Janet Cando-Lothian, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Six Hundred Thirty-Six Dollars and Six Cents ($636.06), payable to Janet Cando-Lothian, and

(c)    Payment in the amount of One Thousand One Hundred Twenty-Eight Dollars and Sixty Cents ($1,128.60), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:    EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:    EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:    EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:    Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:    This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____      Aug. 9, 2004
JANET CANDO-LOTHIAN          Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____     Aug. 9, 2004
JANET CANDO-LOTHIAN          Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By: _____   9/22/04
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE

STATE OF FLORIDA          )
                          )
COUNTY OF _Broward_       )
                          )

Before me, the undersigned notary public, on this date personally appeared JANET CANDO-LOTHIAN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _4_ day of _August_, 2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification



_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) ANGELA CARNOSKE, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 8 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 1

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.   EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of One Thousand Six Hundred Forty-Four Dollars and Twenty-Three Cents ($1,644.23), payable to Angela Carnoske, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of One Thousand Two Hundred Thirty-Three Dollars and Seventeen Cents ($1,233.17), payable to Angela Carnoske, and

(c)   Payment in the amount of One Thousand Four Hundred Seventy-Six Dollars and Ninety-Two Cents ($1,476.92), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
ANGELA CARNOSKE        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
      John Chandler        Date:

      Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
ANGELA CARNOSKE          Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   9/22/04
     John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA            )
                                     )
COUNTY OF  Orange      )

Before me, the undersigned notary public, on this date personally appeared ANGELA CARNOSKE, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 11th day of August,
2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☒ Personal Knowledge; or

☐ Production of Identification

_____
Type of Identification Produced

My Commission Expires:



Jo Ann Sojourner
MY COMMISSION # DD152229 EXPIRES
September 22, 2006
BONDED THRU TROY FAIN INSURANCE, INC.

---

**SETTLEMENT AGREEMENT AND RELEASE**                 **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) DAREN CICCHILLO, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 9 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.*, in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Three Thousand Seven Hundred Fifty-Five Dollars and Seventy-Seven Cents ($3,755.77), payable to Daren Cicchillo, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Two Thousand Eight Hundred Sixteen Dollars and Eighty-Three Cents ($2,816.83), payable to Daren Cicchillo, and

(c)    Payment in the amount of Two Thousand Four Hundred Dollars and Seventy-Two Cents ($2,400.72), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                              PAGE 4

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/10/04
DAREN CICCHILLO          Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

DAREN CICCHILLO        Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                                        PAGE 6

STATE OF FLORIDA                )
                                )
COUNTY OF _Broward_             )

    Before me, the undersigned notary public, on this date personally appeared DAREN CICCHILLO, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

    SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_, 2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc

SETTLEMENT AGREEMENT AND RELEASE               PAGE 7

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JASON DEOLIVEIRA, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 10 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 1

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Six Hundred Five Dollars and Seventy-Seven Cents ($605.77), payable to Jason DeOliveira, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Four Hundred Fifty-Four Dollars and Thirty-Three Cents ($454.33), payable to Jason DeOliveira, and

(c)    Payment in the amount of One Thousand Twenty-Two Dollars and Fifty-Nine Cents ($1,022.59), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:    EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:    EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:    In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:    EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                        PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____     8 / 9 / 04
JASON DEOLIVEIRA        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
    John Chandler        Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 6**

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

JASON DEOLIVEIRA        Date: 8 | 9 | 04

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____ 9/22/04
John Chandler        Date

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA )

COUNTY OF _Broward_ )

Before me, the undersigned notary public, on this date personally appeared JASON DEOLIVEIRA, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _9_ day of _August_, 2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                  **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) LORRAINE ELDRIDGE, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 11 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of One Thousand Two Hundred Eleven Dollars and Fifty-Four Cents ($1,211.54), payable to Lorraine Eldridge, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Nine Hundred Eight Dollars and Sixty-Five Cents ($908.65), payable to Lorraine Eldridge, and

(c)    Payment in the amount of One Thousand Two Hundred Eighty-Seven Dollars and Sixty-Two Cents ($1,287.62), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

_____
EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:   EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   _____
LORRAINE ELDRIDGE        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
    John Chandler          Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/9/04
LORRAINE ELDRIDGE        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____   9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA                    )
                                    )
COUNTY OF _Broward_                 )

     Before me, the undersigned notary public, on this date personally appeared LORRAINE ELDRIDGE, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

     SUBSCRIBED AND SWORN TO BEFORE ME this _9th_ day of _August_ , 2004.

_____
Notary Public in and for
the State of Florida


Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced


My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co, Inc

SETTLEMENT AGREEMENT AND RELEASE                              PAGE 7

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) KEVIN EUTSEY, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 12 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

K · E
EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

    (a)    Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to Kevin Eutsey, less applicable withholding and deductions; and

    (b)    Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to Kevin Eutsey, and

    (c)    Payment in the amount of Three Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

*K.C.*
EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

*KE*
EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:  EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:  EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:  EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:  Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:  This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

_K.E._
EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

_K.E._
EMPLOYEE'S Initials

_K_____ _EJ_____

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____ 9 Aug 04
KEVIN EUTSEY          Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
    John Chandler          Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

_____

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   9 Aug 04
KEVIN EUTSEY        Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____   9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

_____
SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA )
)
COUNTY OF Broward )

Before me, the undersigned notary public, on this date personally appeared KEVIN EUTSEY, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 6th day of August, 2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

_____
SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 7

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) RICHARD EXPOSITO, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 13 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Five Thousand Nine Hundred Nineteen Dollars and Twenty-Three Cents ($5,919.23), payable to Richard Exposito, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Four Thousand Four Hundred Thirty-Nine Dollars and Forty-Two Cents ($4,439.42), payable to Richard Exposito, and

(c)   Payment in the amount of Three Thousand Three Hundred Forty-Seven Dollars and Twenty-Three Cents ($3,347.23), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

_RC_
EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

_____

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

_RE_
EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement. EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement. Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8-6-04_____
RICHARD EXPOSITO        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler        Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8-6-04
RICHARD EXPOSITO       Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   9/22/04
John Chandler       Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA            )

COUNTY OF _Broward_        )
                           )

Before me, the undersigned notary public, on this date personally appeared RICHARD

EXPOSITO, known to me to be the person whose name is subscribed to the foregoing

instrument, and acknowledged that he has executed the same for the purposes and consideration

herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _10th_ day of _August_ ,

2004.

_Carrie McLaughlin_

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_

Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOSEPH FALCONE, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 14 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

_JP_

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

> (a)    Payment by a single check in the amount of Two Thousand Seven Hundred Dollars and Zero Cents ($2,700.00), payable to Joseph Falcone, less applicable withholding and deductions; and

> (b)    Payment by a single check in the amount of Two Thousand Twenty-Five Dollars and Zero Cents ($2,025.00), payable to Joseph Falcone, and

> (c)    Payment in the amount of One Thousand Nine Hundred Thirty-Eight Dollars and Eighty-Two Cents ($1,938.82), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

_____
EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/17/04
JOSEPH FALCONE         Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
         John Chandler         Date:

         Corporate Secretary, Equifax Inc. and
         Equifax eMarketing Solutions, Inc. f/k/a
         Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____     8/17/04
JOSEPH FALCONE        Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By: _____  9/22/04
John Chandler       Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA                    )
                                    )
COUNTY OF Broward                   )

Before me, the undersigned notary public, on this date personally appeared JOSEPH

FALCONE, known to me to be the person whose name is subscribed to the foregoing

instrument, and acknowledged that he has executed the same for the purposes and consideration

herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 17 day of August,

2004.

Carrie McLaughlin

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License

Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) FRED FARINACCI, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 15 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

F.F.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Three Thousand Twenty-Eight Dollars and Eighty-Five Cents ($3,028.85), payable to Fred Farinacci, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Two Thousand Two Hundred Seventy-One Dollars and Sixty-Three Cents ($2,271.63), payable to Fred Farinacci, and

(c)    Payment in the amount of Two Thousand Eighty-Two Dollars and Sixty-Nine Cents ($2,082.69), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

F.F.
EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 2

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## **ARTICLE VI - Miscellaneous**

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

$$\mathcal{F}.\mathcal{F}.$$

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____ 8-13-04 ___
FRED FARINACCI        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
John Chandler        Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

---

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8-13-04

FRED FARINACCI      Date:

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  9/22/04

John Chandler      Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA )

COUNTY OF _Broward_ )

Before me, the undersigned notary public, on this date personally appeared FRED FARINACCI, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _13_ day of _August_, 2004.

_Carrie McLaughlin_

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_NY State Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) RICHARD FELDMAN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 16 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of One Thousand Six Hundred Ninety-Six Dollars and Fifteen Cents ($1,696.15), payable to Richard Feldman, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of One Thousand Two Hundred Seventy-Two Dollars and Twelve Cents ($1,272.12), payable to Richard Feldman, and

(c)   Payment in the amount of One Thousand Four Hundred Ninty-Nine Dollars and Sixty-Four Cents ($1,499.64), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 2

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

RICHARD FELDMAN        Date:

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler        Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____     _____
RICHARD FELDMAN             Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By: _____  9/22/04
John Chandler    Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.



STATE OF FLORIDA )

COUNTY OF Broward )

Before me, the undersigned notary public, on this date personally appeared RICHARD FELDMAN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _11_ day of _August_, 2004.

_Carrie L McLaughlin_

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_FL Drivers License_

Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) MARY FETTERS, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 17 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Three Thousand Twenty-Eight Dollars and Eighty-Five Cents ($3,028.85), payable to Mary Fetters, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Two Thousand  Two Hundred Seventy-One Dollars and Sixty-Three Cents ($2,271.63), payable to Mary Fetters, and

(c)    Payment in the amount of Two Thousand Eighty-Two Dollars and Sixty-Nine Cents ($2,082.69), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 2

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

*mg.*

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

_____
*mg.*
EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                        PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____

MARY FETTERS          Date: _____

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

        John Chandler          Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                              PAGE 6

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

MARY FETTERS      Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   Date:
      John Chandler

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA     )
                                          )
COUNTY OF _____             )

Before me, the undersigned notary public, on this date personally appeared MARY

FETTERS, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that she has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 13 day of August 2004,

2004.

MELVIN M. HURWITZ
Notary Public, State of New York
No. 01HU7018500
Qualified in Kings County
Commission Expires Sept. 30, 2006

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

Type of Identification Produced _____

My Commission Expires: _____

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JEFF FOSTER, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 18 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)     Payment by a single check in the amount of Six Thousand One Hundred Seventy-Eight Dollars and Eighty-Five Cents ($6,178.85), payable to Jeff Foster, less applicable withholding and deductions; and

(b)     Payment by a single check in the amount of Four Thousand Six Hundred Thirty-Four Dollars and Thirteen Cents ($4,634.13), payable to Jeff Foster, and

(c)     Payment in the amount of Three Thousand Four Hundred Sixty Dollars and Eighty-Two Cents ($3,460.82), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.   This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.   EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.   EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.   EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.   Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

<u>Section 6.7</u>:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

<u>Section 6.8</u>:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

<u>Section 6.9</u>:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

<u>Section 6.10</u>:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

<u>Section 6.11</u>:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

<u>Section 6.12</u>:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

<u>Section 6.13</u>:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

<u>Section 6.14</u>:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

<u>Section 6.15</u>:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8-12-04
JEFF FOSTER        Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
     John Chandler        Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8-12-04
JEFF FOSTER        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA                    )
                                    )
COUNTY OF ___*NASSAU*___            )

Before me, the undersigned notary public, on this date personally appeared JEFF

FOSTER, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that he has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this *12th* day of ___*AUGUST*___,

2004.

_____
Notary Public in and for
the State ~~of Florida~~ *NEW YORK*

Signer identified by:

☐ Personal Knowledge; or

☐ Production of Identification

_____
Type of Identification Produced

My Commission Expires:

JOHN J. MEEGAN
NOTARY PUBLIC, State of New York
No. 4979620
Qualified in Nassau County
Commission Expires April 1, *2007*

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) ANTHONY GAETA, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 19 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of One Thousand Three Hundred Thirty-Two Dollars and Sixty-Nine Cents ($1,332.69), payable to Anthony Gaeta, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Nine Hundred Ninety-Nine Dollars and Fifty-Two Cents ($999.52), payable to Anthony Gaeta, and

(c)   Payment in the amount of One Thousand Three Hundred Forty Dollars and Sixty-Two Cents ($1,340.62), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
ANTHONY GAETA      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
John Chandler      Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____ 8/11/04 _____
ANTHONY GAETA      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____ 8/22/04 _____
John Chandler      Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

STATE OF FLORIDA                )
                                )
COUNTY OF Broward               )

Before me, the undersigned notary public, on this date personally appeared ANTHONY

GAETA, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that he has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 11 day of August,

2004.

Carrie McLaughlin
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) MELISSA STEINFELD, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 20 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

MS
EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to Melissa Steinfeld, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to Melissa Steinfeld, and

(c)   Payment in the amount of Three Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

MC
EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

MS
EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:   EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

M S
—————————————
EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.



EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8-13-04
MELISSA STEINFELD    Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
      John Chandler          Date:

      Corporate Secretary, Equifax Inc. and
      Equifax eMarketing Solutions, Inc. f/k/a
      Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 6**

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8-13-04

MELISSA STEINFELD        Date:

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By: _____   9/22/04

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                          PAGE 6

STATE OF FLORIDA            )
                           )
COUNTY OF _Broward_        )

Before me, the undersigned notary public, on this date personally appeared MELISSA STEINFELD, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _13th_ day of _August_, 2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_NY Drivers License_
Type of Identification Produced

My Commission Expires:


Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 7

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) DEREK GIBBS, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 21 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                              PAGE 1

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of One Thousand Seven Hundred Thirty Dollars and Seventy-Seven Cents ($1,730.77), payable to Derek Gibbs, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of One Thousand Two Hundred Ninety-Eight Dollars and Eight Cents ($1,298.08), payable to Derek Gibbs, and

(c)   Payment in the amount of One Thousand Five Hundred Fourteen Dollars and Seventy-Eight Cents ($1,514.78), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement. EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   08/12/04

DEREK GIBBS      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

    John Chandler          Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   08/12/04
DEREK GIBBS     Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   9/22/04
John Chandler     Date

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA )
)
COUNTY OF _Broward_ )
)

Before me, the undersigned notary public, on this date personally appeared DEREK GIBBS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _12_ day of _August_, 2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) LOUIS GLICKMAN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 22 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

_L G_
EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Five Thousand Eighty-Eight Dollars and Forty-Six Cents ($5,088.46), payable to Louis Glickman, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Three Thousand Eight Hundred Sixteen Dollars and Thirty-Five Cents ($3,816.35), payable to Louis Glickman, and

(c)   Payment in the amount of Two Thousand Nine Hundred Eighty-Three Dollars and Seventy-Seven Cents ($2,983.77), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

L G

EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

*L G*

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

*L G*

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_Louis Glickman_ 8/9/04
LOUIS GLICKMAN        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler        Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                          **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_Louis Glickman_  8/9/04
LOUIS GLICKMAN        Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _John Chandler_  9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA )
)
COUNTY OF Broward )

Before me, the undersigned notary public, on this date personally appeared LOUIS GLICKMAN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 9 day of August, 2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co. Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE** **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) VINCE GOLIA, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 23 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of One Hundred Seventy-Three Dollars and Eight Cents ($173.08), payable to Vince Golia, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of One Hundred Twenty-Nine Dollars and Eighty-One Cents ($129.81), payable to Vince Golia, and

(c)   Payment in the amount of Eight Hundred Thirty-Three Dollars and Twenty-Nine Cents ($833.29), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 3

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 4**

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                   PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/10/04
VINCE GOLIA        Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
     John Chandler         Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                                PAGE 6

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/10/04
VINCE GOLIA        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____  9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

_____
SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA            )
                           )
COUNTY OF _Broward_        )

Before me, the undersigned notary public, on this date personally appeared VINCE GOLIA, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_, 2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Marie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) RHONDA IRIZARRY, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 24 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for.the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

---

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Three Thousand Sixty Dollars and Zero Cents ($3,060.00), payable to Rhonda Irizarry, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Two Thousand Two Hundred Ninety-Five Dollars and Zero Cents ($2,295.00), payable to Rhonda Irizarry, and

(c)    Payment in the amount of Two Thousand Ninety-Six Dollars and Thirty-Two Cents ($2,096.32), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## **ARTICLE VI - Miscellaneous**

Section 6.1:  EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:  EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:  EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:  Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:  This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   2/16/04
RHONDA IRIZARRY      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
       John Chandler          Date:

       Corporate Secretary, Equifax Inc. and
       Equifax eMarketing Solutions, Inc. f/k/a
       Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   _2/16/04_
RHONDA IRIZARRY        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  _9/22/04_
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA        )
                        )
COUNTY OF _Broward_     )

Before me, the undersigned notary public, on this date personally appeared RHONDA IRIZARRY, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_, 2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                     **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) SHANNA JACOBS, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 25 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.*, in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of One Thousand Six Hundred Ninety-Six Dollars and Fifteen Cents ($1,696.15), payable to Shanna Jacobs, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of One Thousand Two Hundred Seventy-Two Dollars and Twelve Cents ($1,272.12), payable to Shanna Jacobs, and

(c)    Payment in the amount of One Thousand Four Hundred Ninety-Nine Dollars and Sixty-Four Cents ($1,499.64), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   Date: _8/12/04_
SHANNA JACOBS

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
    John Chandler          Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   Date: 8/12/04
SHANNA JACOBS

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   Date: 9/22/04
John Chandler

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                      PAGE 6

STATE OF ~~FLORIDA~~ Texas )
                                  )
COUNTY OF Dallas )

Before me, the undersigned notary public, on this date personally appeared SHANNA JACOBS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 12 day of August ,

2004.



Vanessa L Tucker

Notary Public in and for
the State of ~~Florida~~ Texas

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

Florida DL # J212-742-67-639-0

Type of Identification Produced

My Commission Expires: 11·15·04

---

**SETTLEMENT AGREEMENT AND RELEASE**                                  **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) PETER LABELLA, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 26 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.*, in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of One Thousand Six Hundred Forty-Four Dollars and Twenty-Three Cents ($1,644.23), payable to Peter Labella, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of One Thousand Two Hundred Thirty-Three Dollars and Seventeen Cents ($1,233.17), payable to Peter Labella, and

(c)   Payment in the amount of One Thousand Four Hundred Seventy-Six Dollars and Ninety-Two Cents ($1,476.92), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8|9|04

PETER LABELLA       Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                          **PAGE 6**

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____     8|9|04
PETER LABELLA     Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  9/22/04
John Chandler     Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA            )

COUNTY OF             )
                                  )

    Before me, the undersigned notary public, on this date personally appeared PETER LABELLA, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

    SUBSCRIBED AND SWORN TO BEFORE ME this _____ day of _____, 2004.

                                    _____

                                    Notary Public in and for
                                    the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
Type of Identification Produced

My Commission Expires:

                 Carrie McLaughlin
                 Commission #DD198840
                 Expires: Mar 31, 2007
                   Bonded Thru
                 Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                     **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) SAMUEL LEDERMAN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 27 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 1

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Five Thousand Three Hundred One Dollars and Ninety-Two Cents ($5,301.92), payable to Samuel Lederman, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Three Thousand Nine Hundred Seventy-Six Dollars and Forty-Four Cents ($3,976.44), payable to Samuel Lederman, and

(c)    Payment in the amount of Three Thousand Seventy-Seven Dollars and Sixteen Cents ($3,077.16), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
SAMUEL LEDERMAN       Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
    John Chandler    Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
SAMUEL LEDERMAN        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA            )
                           )
COUNTY OF _Broward_        )

Before me, the undersigned notary public, on this date personally appeared SAMUEL LEDERMAN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _11_ day of _August_, 2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_NJ Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co, Inc

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 7

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) DAVID MAGUN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 28 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4: By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1: The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a) Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to David Magun, less applicable withholding and deductions; and

(b) Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to David Magun, and

(c) Payment in the amount of Three Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2: This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1: For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
DAVID MAGUN      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler        Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                        PAGE 6

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
DAVID MAGUN        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____ 9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

STATE OF FLORIDA        )
                        )
COUNTY OF _Broward_     )

   Before me, the undersigned notary public, on this date personally appeared DAVID

MAGUN, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that he has executed the same for the purposes and consideration herein

expressed.

   SUBSCRIBED AND SWORN TO BEFORE ME this _11_ day of _August_ ,

2004.


                              _Carrie McLaughlin_
                              Notary Public in and for
                              the State of Florida


Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_Fl Drivers License_
Type of Identification Produced


My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc


SETTLEMENT AGREEMENT AND RELEASE                              PAGE 7

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) DENNY MARIN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 29 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of One Thousand One Hundred Twenty-Five Dollars and Zero Cents ($1,125.00), payable to Denny Marin, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Eight Hundred Forty-Three Dollars and Seventy-Five Cents ($843.75), payable to Denny Marin, and

(c)    Payment in the amount of One Thousand Two Hundred Forty-Nine Dollars and Seventy-Six Cents ($1,249.76), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  08/10/04
DENNY MARIN        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
     John Chandler          Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

Date: 8/10/04

DENNY MARIN        Date:

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  9/22/04

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA                )
                                               )
COUNTY OF _Broward_          )

Before me, the undersigned notary public, on this date personally appeared DENNY MARIN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_, 2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOHN MACKINNON, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 30 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

---

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Five Thousand Six Hundred Ninety-Four Dollars and Twenty-Three Cents ($5,694.23), payable to John MacKinnon, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Four Thousand Two Hundred Seventy Dollars and Sixty-Seven Cents ($4,270.67), payable to John MacKinnon, and

(c)    Payment in the amount of Three Thousand Two Hundred Forty-Eight Dollars and Eighty Cents ($3,248.80), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                      PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/10/2004
JOHN MACKINNON        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler        Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

JOHN MACKINNON   Date: 8/10/2004

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By: _____   9/27/04

John Chandler   Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA          )
                          ))
COUNTY OF Broward )


 Before me, the undersigned notary public, on this date personally appeared JOHN

MACKINNON, known to me to be the person whose name is subscribed to the foregoing

instrument, and acknowledged that he has executed the same for the purposes and consideration

herein expressed.

 SUBSCRIBED AND SWORN TO BEFORE ME this 10 day of August,

2004.

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License

Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                        **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) MICHAEL MOLCHAN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 31 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 1

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of One Thousand Seven Hundred Thirty Dollars and Seventy-Seven Cents ($1,730.77), payable to Michael Molchan, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of One Thousand Two Hundred Ninety-Eight Dollars and Eight Cents ($1,298.08), payable to Michael Molchan, and

(c)    Payment in the amount of One Thousand Five Hundred Fourteen Dollars and Seventy-Eight Cents ($1,514.78), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/23/04

MICHAEL MOLCHAN        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

John Chandler         Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/23/04
MICHAEL MOLCHAN     Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions,
Inc. f/k/a Naviant, Inc.

By: _____  9/22/04
John Chandler     Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

STATE OF FLORIDA )
)
COUNTY OF ~~Broward~~ )

Before me, the undersigned notary public, on this date personally appeared MICHAEL MOLCHAN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 23 day of August,

2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida


Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
Type of Identification Produced


My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                           **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) DIEGO MONTOYA, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 32 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.*, in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Eight Hundred Sixty-Five Dollars and Thirty-Eight Cents ($865.38), payable to Diego Montoya, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Six Hundred Forty-Nine Dollars and Four Cents ($649.04), payable to Diego Montoya, and

(c)    Payment in the amount of One Thousand One Hundred Thirty-Six Dollars and Eighteen Cents ($1,136.18), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:    EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:    EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:    In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:    EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.   This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.   EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.   EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.   EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.   Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.



EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____     _____
DIEGO MONTOYA          Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
       John Chandler          Date:

       Corporate Secretary, Equifax Inc. and
       Equifax eMarketing Solutions, Inc. f/k/a
       Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   Date: _____
DIEGO MONTOYA

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff


**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____
John Chandler          Date

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                    PAGE 6

STATE OF FLORIDA           )
                                )
COUNTY OF _Broward_   )

Before me, the undersigned notary public, on this date personally appeared DIEGO MONTOYA, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _20_ day of _August_, 2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co. Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**          **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOANNA MUSACCHIO, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 33 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                        PAGE 1

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Three Thousand Three Hundred Ninety-Two Dollars and Thirty-One Cents ($3,392.31), payable to Joanna Musacchio, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Two Thousand Five Hundred Forty-Four Dollars and Twenty-Three Cents ($2,544.23), payable to Joanna Musacchio, and

(c)   Payment in the amount of Two Thousand Two Hundred Forty-One Dollars and Seventy Cents ($2,241.70), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

---

**SETTLEMENT AGREEMENT AND RELEASE**                              **PAGE 5**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

JOANNA MUSACCHIO    Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler        Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

JOANNA MUSACCHIO      Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By:
John Chandler      Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                                PAGE 6

STATE OF ~~FLORIDA~~ *California*   )

)

COUNTY OF *Los Angeles*  )

Before me, the undersigned notary public, on this date personally appeared JOANNA MUSACCHIO, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this *11* day of *August* ,

2004.



MELISSA KAY KESSLER
COMM. #1479888
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Mar. 30, 2008

Notary Public in and for
the State of ~~Florida~~ *California*

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

*Driver's License*

Type of Identification Produced

My Commission Expires:

*March 30, 2008*

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) MARCUS OBSER, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 34 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

---

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to Marcus Obser, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to Marcus Obser, and

(c)    Payment in the amount of Three Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____
MARCUS OBSER          Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**


By:_____
     John Chandler          Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                              **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____

MARCUS OBSER        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____ 9/22/04

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                    PAGE 6

STATE OF FLORIDA                            )
                                           )
COUNTY OF  Broward                          )

Before me, the undersigned notary public, on this date personally appeared MARCUS

OBSER, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that he has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this  11  day of  August ,

2004.

Carrie McLaughlin
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

NY Drivers License
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                           **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) MICHAEL PANCOSKA, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 35 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Two Thousand Seventy-Six Dollars and Ninety-Two Cents ($2,076.92), payable to Michael Pancoska, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of One Thousand Five Hundred Fifty-Seven Dollars and Sixty-Nine Cents ($1,557.69), payable to Michael Pancoska, and

(c)   Payment in the amount of One Thousand Six Hundred Sixty-Six Dollars and Twenty-Two Cents ($1,666.22), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYER be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

MICHAEL PANCOSKA          Date: 8/9/04

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
          John Chandler          Date:

          Corporate Secretary, Equifax Inc. and
          Equifax eMarketing Solutions, Inc. f/k/a
          Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

MICHAEL PANCOSKA          Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By

John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA                    )
                                    )
COUNTY OF _broward_                 )

    Before me, the undersigned notary public, on this date personally appeared MICHAEL

PANCOSKA, known to me to be the person whose name is subscribed to the foregoing

instrument, and acknowledged that he has executed the same for the purposes and consideration

herein expressed.

    SUBSCRIBED AND SWORN TO BEFORE ME this _9_ day of _August_,

2004.

                           _____

                           Notary Public in and for
                           the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_Fl Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co  Inc

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) SEAN PARKE, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 36 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.



EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                            PAGE 1

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)     Payment by a single check in the amount of Six Thousand One Hundred Twenty-Six Dollars and Ninety-Two Cents ($6,126.92), payable to Sean Parke, less applicable withholding and deductions; and

(b)     Payment by a single check in the amount of Four Thousand Five Hundred Ninety-Five Dollars and Nineteen Cents ($4,595.19), payable to Sean Parke, and

(c)     Payment in the amount of Three Thousand Four Hundred Thirty-Eight Dollars and Ten Cents ($3,438.10), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                                    PAGE 2

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.



EMPLOYEE'S Initials

## **ARTICLE VI - Miscellaneous**

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.



EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.



EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/09/04
SEAN PARKE        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
    John Chandler          Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

SEAN PARKE        Date: 8/09/04

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____ 9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

STATE OF FLORIDA          )
                          )
COUNTY OF *Broward*       )

Before me, the undersigned notary public, on this date personally appeared SEAN PARKE, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _9_ day of _August_, 2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

*FL Drivers License*
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                     **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) TOM PETROPOULOS, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 37 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

_____

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

   (a)    Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to Tom Petropoulos, less applicable withholding and deductions; and

   (b)    Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to Tom Petropoulos, and

   (c)    Payment in the amount of Three Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination



EMPLOYEE'S Initials

---

**SETTLEMENT AGREEMENT AND RELEASE**                                        **PAGE 2**

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:    EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:    EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:    In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:    EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

*J. P.*

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

*J. P.*

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

_J. P._

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_Tom Petropoulo_        8/12/04
TOM PETROPOULOS        Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
     John Chandler        Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_Tom Petropoulos_          _8/12/04_
TOM PETROPOULOS          Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _John Chandler_   _9/22/04_
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA            )
                            )
COUNTY OF _Broward_         )

Before me, the undersigned notary public, on this date personally appeared TOM

PETROPOULOS, known to me to be the person whose name is subscribed to the foregoing

instrument, and acknowledged that he has executed the same for the purposes and consideration

herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _2_ day of _August_ ,

2004.

_____

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_California Drivers License_
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                          **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOHN PHILBIN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 38 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                        PAGE 1

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to John Philbin, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to John Philbin, and

(c)    Payment in the amount of Three Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                     PAGE 2

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

8/9/04

_____
JOHN PHILBIN          Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

     John Chandler          Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

_____
**SETTLEMENT AGREEMENT AND RELEASE**                              **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/9/04
JOHN PHILBIN          Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By:_____   9/22/04
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

STATE OF FLORIDA          )
                          )
COUNTY OF           )

Before me, the undersigned notary public, on this date personally appeared JOHN PHILBIN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 9 day of August, 2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co, Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                      **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) ENRIQUE RODRIGUEZ, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 39 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

_____
EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to Enrique Rodriguez, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to Enrique Rodriguez, and

(c)    Payment in the amount of Three Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

_EH_

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8-12-2004
ENRIQUE RODRIGUEZ      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

    John Chandler      Date:

    Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____ 8-12-2004

ENRIQUE RODRIGUEZ        Date:

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By:_____ 9/22/04

John Chandler         Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA      )

                      )

COUNTY OF  _Broward_   )

Before me, the undersigned notary public, on this date personally appeared ENRIQUE RODRIGUEZ, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _12_ day of _August_, 2004.

_____

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_U.S. Passport_____

Type of Identification Produced

My Commission Expires:


Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**           **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) CRAIG RONA, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 40 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                        PAGE 1

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

      (a)    Payment by a single check in the amount of Three Thousand Six Hundred Thirty-Five Dollars and Ninety-Seven Cents ($3,635.97), payable to Craig Rona, less applicable withholding and deductions; and

      (b)    Payment by a single check in the amount of Two Thousand Seven Hundred Twenty-Six Dollars and Ninety-Eight Cents ($2,726.98), payable to Craig Rona, and

      (c)    Payment in the amount of Two Thousand Three Hundred Forty-Eight Dollars and Thirty-One Cents ($2,348.31), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

_____
EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
CRAIG RONA      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
       John Chandler       Date:

       Corporate Secretary, Equifax Inc. and
       Equifax eMarketing Solutions, Inc. f/k/a
       Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
CRAIG RONA      Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____   9/22/04
John Chandler      Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

STATE OF FLORIDA            )
                            )
COUNTY OF _Broward_         )

Before me, the undersigned notary public, on this date personally appeared CRAIG

RONA, known to me to be the person whose name is subscribed to the foregoing instrument, and

acknowledged that he has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _15th_ day of _Sept._____,

2004.



_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_Drivers Lic._____
Type of Identification Produced

My Commission Expires:

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) ERIC ROSENBERG, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 41 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to Eric Rosenberg, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to Eric Rosenberg, and

(c)    Payment in the amount of Three Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYER be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## **ARTICLE VI - Miscellaneous**

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.   This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.   EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.   EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.   EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.   Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                              PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/12/2004
ERIC ROSENBERG   Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**


By:_____
    John Chandler          Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_Eric Rosenberg_  Date: _8/12/2004_

ERIC ROSENBERG  Date:

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _John Chandler_  Date: _9/22/04_

John Chandler  Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

~~STATE OF FLORIDA~~ NEW JERSEY )
)
COUNTY OF MONMOUTH )

Before me, the undersigned notary public, on this date personally appeared ERIC

ROSENBERG, known to me to be the person whose name is subscribed to the foregoing

instrument, and acknowledged that he has executed the same for the purposes and consideration

herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 12TH day of AUGUST ,

2004.

_____
Notary Public in and for
the ~~State of Florida~~ NEW JERSEY

RAYMOND C STONE
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES AUG 24 2...

Signer identified by:

☒ Personal Knowledge; or

☐ Production of Identification

_____
Type of Identification Produced

My Commission Expires:



# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) DYLAN ROSSI, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 42 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Three Thousand Eight Hundred Twenty-One Dollars and Five Cents ($3,821.05), payable to Dylan Rossi, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Two Thousand Eight Hundred Sixty-Five Dollars and Seventy-Nine Cents ($2,865.79), payable to Dylan Rossi, and

(c)   Payment in the amount of Two Thousand Four Hundred Twenty-Nine Dollars and Twenty-Eight Cents ($2,429.28), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.



EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:    EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:    EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:    EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:    Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:    This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____ 8/8/04

DYLAN ROSSI     Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

　　　John Chandler　　　Date:

　　　Corporate Secretary, Equifax Inc. and
　　　Equifax eMarketing Solutions, Inc. f/k/a
　　　Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

DYLAN ROSSI          Date: 8/8/04

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____          Date: _____
    John Chandler

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                      PAGE 6

STATE OF FLORIDA        )
                            )

COUNTY OF _Broward_   )

      Before me, the undersigned notary public, on this date personally appeared DYLAN ROSSI, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

      SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_, 2004.

                                                                             
                                             Notary Public in and for
                                             the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                      **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) WALTER SABRIN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 43 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1: EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2: EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3: The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

W S
EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Two Thousand Seven Hundred Dollars and Zero Cents ($2,700.00), payable to Walter Sabrin, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Two Thousand Twenty-Five Dollars and Zero Cents ($2,025.00), payable to Walter Sabrin, and

(c)   Payment in the amount of One Thousand Nine Hundred Thirty-Eight Dollars and Eighty-Two Cents ($1,938.82), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

U S

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:   EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

$\smile \checkmark$

EMPLOYEE'S Initials

Section 6.7: The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8: EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9: EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10: EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement. EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11: In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12: Each party has been given an opportunity to participate in the drafting and preparation of this Agreement. Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13: If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14: The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15: This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

_W6_

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
WALTER SABRIN      Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
John Chandler      Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04

WALTER SABRIN      Date:

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____   9/22/04

John Chandler   Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA                )
                                )
COUNTY OF Broward               )

Before me, the undersigned notary public, on this date personally appeared WALTER

SABRIN, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that he has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 11 day of August,

2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

NY Drivers License
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

SETTLEMENT AGREEMENT AND RELEASE                                        PAGE 7

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOHN SALMON, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 44 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                          PAGE 1

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Five Thousand Two Hundred Sixty-Five Dollars and Zero Cents ($5,265.00), payable to John Salmon, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Three Thousand Nine Hundred Forty-Eight Dollars and Seventy-Five Cents ($3,948.75), payable to John Salmon, and

(c)   Payment in the amount of Three Thousand Sixty-One Dollars and One Cent ($3,061.01), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:     The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:     EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:     EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

JOHN SALMON        Date: 8/10/04

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler        Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____     _____
JOHN SALMON       Date:        8/10/04

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By: _____     _____
John Chandler       Date:        9/22/04

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA             )
                             )
COUNTY OF _Broward_          )

Before me, the undersigned notary public, on this date personally appeared JOHN SALMON, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_, 2004.

_Carrie V McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

McLaughlin
mission #DD198840
Expires: Mar 31, 2007
Bonded Thru
antic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOHN SAVERIANA, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 45 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Four Thousand One Hundred Nineteen Dollars and Twenty-Three Cents ($4,119.23), payable to John Saveriana, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Three Thousand Eighty-Nine Dollars and Forty-Two Cents ($3,089.42), payable to John Saveriana, and

(c)   Payment in the amount of Two Thousand Five Hundred Fifty-Nine Dollars and Seventy-Three Cents ($2,559.73), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:    EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:    EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:    In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:    EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
JOHN SAVERIANA          Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

JOHN SAVERIANA          Date:    8/11/04

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By:          John Chandler          Date:    9/22/04

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA~~ ~~ _N.Y_ )
)
COUNTY OF ___N.Y___ )

Before me, the undersigned notary public, on this date personally appeared JOHN

SAVERIANA, known to me to be the person whose name is subscribed to the foregoing

instrument, and acknowledged that he has executed the same for the purposes and consideration

herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _17_ day of _August_ ,

2004.

_____
Notary Public in and for
~~the State of Florida~~ _State N.Y_
_County N.Y_

JEFFREY G. CANIZARES
Notary Public, State Of New York
No. 01CA6060593
Qualified In New York County
Commission Expires June 25, 200_7_

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_N.Y.S Driver License_
Type of Identification Produced

My Commission Expires:

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JEFF SCHWENK, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 46 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Four Thousand Six Hundred Forty Dollars and Forty-Three Cents ($4,640.43), payable to Jeff Schwenk, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Three Thousand Four Hundred Eighty Dollars and Thirty-Three Cents ($3,480.33), payable to Jeff Schwenk, and

(c)   Payment in the amount of Two Thousand Seven Hundred Eighty-Seven Dollars and Seventy-Six Cents ($2,787.76), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   7/11/04
JEFF SCHWENK          Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler          Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   7/11/04
JEFF SCHWENK          Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____  9/22/04
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF ~~FLORIDA~~ *New York* )
                                )
COUNTY OF *New York*            )

Before me, the undersigned notary public, on this date personally appeared JEFF SCHWENK, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this *11th* day of *August*,

2004.

Notary Public in and for
the State of ~~Florida~~ *New York*

SANDRA MORGAN
Notary Public, State of New York
No. 24-4713771
Qualified in Kings County
Commission Expires:
*1-31-2007*

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification
*New York State*
*Learner Permit 5/13/08*
Type of Identification Produced

My Commission Expires:

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) GREGG SOBEL, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 47 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

_GS_
EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to Gregg Sobel, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to Gregg Sobel, and

(c)    Payment in the amount of Three Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

GS
EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

<u>GS</u>
EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

GS
EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

G-S
_____
EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____ 8/10/0Y
GREGG SOBEL        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
     John Chandler          Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                    PAGE 6

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/10/0Y

GREGG SOBEL        Date:

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  9/22/04

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA                )
                                )
COUNTY OF _Broward_             )

Before me, the undersigned notary public, on this date personally appeared GREGG

SOBEL, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that he has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_,

2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co Inc

SETTLEMENT AGREEMENT AND RELEASE                          PAGE 7

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) EYAL VADAI, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 48 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.



EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)     Payment by a single check in the amount of Five Thousand Eight Hundred Ten Dollars and Forty Cents ($5,810.40), payable to Eyal Vadai, less applicable withholding and deductions; and

(b)     Payment by a single check in the amount of Four Thousand Three Hundred Fifty-Seven Dollars and Eighty Cents ($4,357.80), payable to Eyal Vadai, and

(c)     Payment in the amount of Three Thousand Two Hundred Ninety-Nine Dollars and Sixty-Two Cents ($3,299.62), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                          PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____ 8/11/04

EYAL VADAI      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

      John Chandler          Date:

      Corporate Secretary, Equifax Inc. and
      Equifax eMarketing Solutions, Inc. f/k/a
      Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/11/04
EYAL VADAI        Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By: _____   9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA )

COUNTY OF _Broward_ )

Before me, the undersigned notary public, on this date personally appeared EYAL VADAI, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this __11__ day of _August_, 2004.

_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

NY State Drivers License

Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                      **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) ROGER WALKER, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 49 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of One Thousand Eighty Dollars and Zero Cents ($1,080.00), payable to Roger Walker, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Eight Hundred Ten Dollars and Zero Cents ($810.00), payable to Roger Walker, and

(c)    Payment in the amount of One Thousand Two Hundred Thirty Dollars and Seven Cents ($1,230.07), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                      PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   08-09-04
ROGER WALKER      Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler         Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                    PAGE 6

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   08-09-04
ROGER WALKER      Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   9/22/04
John Chandler      Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

STATE OF FLORIDA                )

COUNTY OF _Broward_             )
                                )

Before me, the undersigned notary public, on this date personally appeared ROGER

WALKER, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that he has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 9th day of _August_,

2004.


_Carrie McLaughlin_
Notary Public in and for
the State of Florida


Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification


_FL Drivers License_
Type of Identification Produced


My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) CRAIG WILSON, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 50 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Two Thousand Nine Hundred Seven Dollars and Sixty-Nine Cents ($2,907.69), payable to Craig Wilson, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Two Thousand One Hundred Eighty Dollars and Seventy-Seven Cents ($2,180.77), payable to Craig Wilson, and

(c)    Payment in the amount of Two Thousand Twenty-Nine Dollars and Sixty-Nine Cents ($2,029.69), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.   This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.   EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.   EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.   EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.   Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.



EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.



EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   5/11/04
CRAIG WILSON          Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
John Chandler          Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   5/11/04

CRAIG WILSON          Date:

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   9/22/04

John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE

STATE OF ~~FLORIDA~~ North Carolina }
)
COUNTY OF _____ Wake _____ )

Before me, the undersigned notary public, on this date personally appeared CRAIG WILSON, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this __ll__ day of __August__, 2004.



Notary Public in and for
the State of ~~Florida~~ North Carolina

Signer identified by:

☐ Personal Knowledge; or

☐ Production of Identification

_____

Type of Identification Produced

My Commission Expires:

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JUSTIN WORKMAN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 51 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of One Thousand Two Hundred Eleven Dollars and Fifty-Four Cents ($1,211.54), payable to Justin Workman, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Nine Hundred Eight Dollars and Sixty-Five Cents ($908.65), payable to Justin Workman, and

(c)   Payment in the amount of One Thousand Two Hundred Eighty-Seven Dollars and Sixty-Two Cents ($1,287.62), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   68-10-04.
JUSTIN WORKMAN        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
John Chandler         Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

08-10-04

JUSTIN WORKMAN        Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By:                          9/22/04

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

STATE OF FLORIDA                                )

COUNTY OF _Broward_                        )
                                                                )

Before me, the undersigned notary public, on this date personally appeared JUSTIN WORKMAN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_, 2004.

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

---

**SETTLEMENT AGREEMENT AND RELEASE**                                                **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOSEPH CUTRONI, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 52 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 1

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Three Thousand Two Hundred Dollars and Zero Cents ($3,200.00), payable to Joseph Cutroni, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Two Thousand Four Hundred Dollars and Zero Cents ($2,400.00), payable to Joseph Cutroni, and

(c)    Payment in the amount of Two Thousand One Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($2,157.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

---

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 2

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 4

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____
JOSEPH CUTRONI      Date: 8/13/04

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
     John Chandler        Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____

JOSEPH CUTRONI        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA                    )

COUNTY OF _Broward_                 )
                                    )

Before me, the undersigned notary public, on this date personally appeared JOSEPH CUTRONI, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _13_ day of _August_, 2004.

_____

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) GABRIELLE DALTON, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 53 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                              PAGE 1

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Five Thousand Four Hundred Eighty-Five Dollars and Seventy-One Cents ($5,485.71), payable to Gabrielle Dalton, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Four Thousand One Hundred Fourteen Dollars and Twenty-Nine Cents ($4,114.29), payable to Gabrielle Dalton, and

(c)   Payment in the amount of Three Thousand One Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($3,157.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_Gabriell Dalton_  8/10/04
GABRIELLE DALTON     Date:

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
     John Chandler          Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_Gabrielle Dalton_ 8/10/04
GABRIELLE DALTON     Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions,
Inc. f/k/a Naviant, Inc.

By: _John Chandler_ 9/22/04
John Chandler     Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

STATE OF FLORIDA        )

COUNTY OF _Broward_    )

       Before me, the undersigned notary public, on this date personally appeared GABRIELLE DALTON, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

       SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_, 2004.

_____

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification


_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**        **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) KERRI DAUCH, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 54 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Six Hundred Thirty-Four Dollars and Sixty-One Cents ($634.61), payable to Kerri Dauch, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Four Hundred Seventy-Five Dollars and Ninety-Six Cents ($475.96), payable to Kerri Dauch, and

(c)   Payment in the amount of One Thousand Thirty-Five Dollars and Twenty-One Cents ($1,035.21), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

---

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement. EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement. Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/9/04
KERRI DAUCH        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
    John Chandler        Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____ 8/9/04
KERRI DAUCH          Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____ 9/22/04
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA                )

COUNTY OF _Broward_  )

Before me, the undersigned notary public, on this date personally appeared KERRI DAUCH, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 9 day of _August_, 2004.

_Carrie McLaughlin_

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:



Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JACLYN DEOLIVEIRA, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 55 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYER'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Three Thousand Two Hundred Dollars and Zero Cents ($3,200.00), payable to Jaclyn DeOliveira, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Two Thousand Four Hundred Dollars and Zero Cents ($2,400.00), payable to Jaclyn DeOliveira, and

(c)   Payment in the amount of Two Thousand One Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($2,157.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                      PAGE 5

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.


IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   Date: 8/9/04
JACLYN DEOLIVEIRA

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff


**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**


By:_____
          John Chandler          Date:

          Corporate Secretary, Equifax Inc. and
          Equifax eMarketing Solutions, Inc. f/k/a
          Naviant, Inc.

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/9/04
JACLYN DEOLIVEIRA      Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____   9/22/04
John Chandler      Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA          )
                          )
COUNTY OF _Broward_       )

Before me, the undersigned notary public, on this date personally appeared JACLYN DEOLIVEIRA, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _9_ day of _August_, 2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification


_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) ERIC FABRITIUS, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 56 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

*EF*

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

   (a)   Payment by a single check in the amount of One Thousand Three Hundred Seventy-One Dollars and Forty-Three Cents ($1,371.43), payable to Eric Fabritius, less applicable withholding and deductions; and

   (b)   Payment by a single check in the amount of One Thousand Twenty-Eight Dollars and Fifty-Seven Cents ($1,028.57), payable to Eric Fabritius, and

   (c)   Payment in the amount of One Thousand Three Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($1,357.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

*E F*

EMPLOYEE'S Initials

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 2

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

*E F*

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

*EF*
_____
EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

_EF_
EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                          PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/9/04

ERIC FABRITIUS        Date:

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

    John Chandler        Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                           **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

8/9/04

ERIC FABRITIUS        Date:

APPROVED AS TO FORM AND CONTENT:

Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By: _____   9/22/04

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                    PAGE 6

STATE OF FLORIDA        )

COUNTY OF  Broward  )
                        )

    Before me, the undersigned notary public, on this date personally appeared ERIC FABRITIUS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

    SUBSCRIBED AND SWORN TO BEFORE ME this __9__ day of _August_, 2004.

_Carrie McLaughlin_

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_FL Drivers License_

Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) EVELYN HENNICK, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 57 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.*, in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

*EH*
_____
EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Three Thousand Two Hundred Dollars and Zero Cents ($3,200.00), payable to Evelyn Hennick, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Two Thousand Four Hundred Dollars and Zero Cents ($2,400.00), payable to Evelyn Hennick, and

(c)   Payment in the amount of Two Thousand One Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($2,157.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

_EH_
EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                     PAGE 2

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

*EH*
EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EH
EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

_E H_
EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

EVELYN HENNICK        Date: 9/13/04

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____
EVELYN HENNICK        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                    PAGE 6

STATE OF ~~FLORIDA~~ *CALIFORNIA*  )

COUNTY OF *Los Angeles*  )

Before me, the undersigned notary public, on this date personally appeared EVELYN

HENNICK, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that she has executed the same for the purposes and consideration herein

expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 13 day of *September* ,

2004.

*Alexandra Kelsey*

Notary Public in and for

the State of ~~Florida~~ *California*

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

*NY Driving License*

Type of Identification Produced



ALEXANDRA KELSEY
COMM. #1312569
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. July 9, 2005

My Commission Expires: *9 July, 2005*

---

SETTLEMENT AGREEMENT AND RELEASE                                        PAGE 7

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) LYNN KARADEMIR, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 58 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Three Thousand Two Hundred Dollars and Zero Cents ($3,200.00), payable to Lynn Karademir, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Two Thousand Four Hundred Dollars and Zero Cents ($2,400.00), payable to Lynn Karademir, and

(c)    Payment in the amount of Two Thousand One Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($2,157.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

---

SETTLEMENT AGREEMENT AND RELEASE                                          PAGE 2

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

_EMPLOYEE'S Initials_

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                        PAGE 4

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

*Lynn Karademir      August 9 2004*
LYNN KARADEMIR      Date

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

    John Chandler      Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

*Lynn Karademir          August 9 2004*
LYNN KARADEMIR          Date

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: *John Chandler          9/22/04*
John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                      PAGE 6

STATE OF FLORIDA )
)
COUNTY OF Broward )

Before me, the undersigned notary public, on this date personally appeared LYNN KARADEMIR, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 9 day of August, 2004.

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                        **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) NATALIE MORGEN, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 59 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

---

SETTLEMENT AGREEMENT AND RELEASE                                            PAGE 1

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYER'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Three Thousand Two Hundred Dollars and Zero Cents ($3,200.00), payable to Natalie Morgen, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Two Thousand Four Hundred Dollars and Zero Cents ($2,400.00), payable to Natalie Morgen, and

(c)   Payment in the amount of Two Thousand One Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($2,157.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:  EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:  EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:  In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:  EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____
NATALIE MORGEN         Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
        John Chandler          Date:

        Corporate Secretary, Equifax Inc. and
        Equifax eMarketing Solutions, Inc. f/k/a
        Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

NATALIE MORGEN          Date:

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:                    9/22/04
John Chandler          Date

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA                    )
                                    )
COUNTY OF _Broward_                 )

Before me, the undersigned notary public, on this date personally appeared NATALIE MORGEN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_, 2004.

_Carrie McLaughlin_
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_FL Drivers License_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                      **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) MELISSA REIF, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 60 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4: By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1: The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a) Payment by a single check in the amount of Four Thousand Five Hundred Seventy-One Dollars and Forty-Three Cents ($4,571.43), payable to Melissa Reif, less applicable withholding and deductions; and

(b) Payment by a single check in the amount of Three Thousand Four Hundred Twenty-Eight Dollars and Fifty-Seven Cents ($3,428.57), payable to Melissa Reif, and

(c) Payment in the amount of Two Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($2,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2: This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1: For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans

_____
EMPLOYEE'S Initials

With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

_____

EMPLOYEE'S Initials

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

EMPLOYEE'S Initials

Section 6.14: The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15: This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____     8/9/04
MELISSA REIF         Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
      John Chandler         Date:

      Corporate Secretary, Equifax Inc. and
      Equifax eMarketing Solutions, Inc. f/k/a
      Naviant, Inc.

Section 6.14: The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15: This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____    8|9|04
MELISSA REIF        Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

By: _____  9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA          )
                          )
COUNTY OF Broward        )

Before me, the undersigned notary public, on this date personally appeared MELISSA REIF, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 9 day of August, 2004.

_Carrie McLaughlin_

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

FL Drivers License

Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                        **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) ILISSA SHAPIRO, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

This Agreement is numbered 61 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a current employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Three Thousand Two Hundred Dollars and Zero Cents ($3,200.00), payable to Ilissa Shapiro, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Two Thousand Four Hundred Dollars and Zero Cents ($2,400.00), payable to Ilissa Shapiro, and

(c)    Payment in the amount of Two Thousand One Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($2,157.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

---

**SETTLEMENT AGREEMENT AND RELEASE**                                          **PAGE 2**

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.   This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.   EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.   EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.5:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

Section 6.6:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

EMPLOYEE'S Initials

---

Section 6.7:   EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.8:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.9:   EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement. EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.10:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.11:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement. Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.12:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.13:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.14:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.15: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

ILISSA SHAPIRO      Date:

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
    John Chandler          Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 6**

Section 6.15: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

ILISSA SHAPIRO        Date:

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:

John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

STATE OF FLORIDA            )
                            )
COUNTY OF Broward           )

Before me, the undersigned notary public, on this date personally appeared ILISSA SHAPIRO, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 11 day of August, 2004.

Carrie McLaughlin
_____
Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
_____
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co. Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) KINSEY SINCAVAGE, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 62 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit. EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever. This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Three Thousand Two Hundred Dollars and Zero Cents ($3,200.00), payable to Kinsey Sincavage, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Two Thousand Four Hundred Dollars and Zero Cents ($2,400.00), payable to Kinsey Sincavage, and

(c)   Payment in the amount of Two Thousand One Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($2,157.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination

KJS
EMPLOYEE'S Initials

in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

KJS
EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.   The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.   This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.   EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.   EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.   In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.   EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.   Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

KJS

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

KJS

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

*Kinsey Sincavage*   8/12/04
KINSEY SINCAVAGE      Date:

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
      John Chandler         Date:

      Corporate Secretary, Equifax Inc. and
      Equifax eMarketing Solutions, Inc. f/k/a
      Naviant, Inc.

**Section 6.16:** This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_Kinsey Sincavage_   8/12/04
KINSEY SINCAVAGE   Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____   9/22/04
John Chandler   Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF FLORIDA                    )
                                    )
COUNTY OF *Broward*                 )

Before me, the undersigned notary public, on this date personally appeared KINSEY

SINCAVAGE, known to me to be the person whose name is subscribed to the foregoing

instrument, and acknowledged that he has executed the same for the purposes and consideration

herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this ___ day of _August_,

2004.

                                    _____
                                    Notary Public in and for
                                    the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_FL ID Card_
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOHN ZELLS, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 63 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:    EMPLOYEE is a current employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:    EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:    The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of One Thousand Three Hundred Seventy-One Dollars and Forty-Three Cents ($1,371.43), payable to John Zells, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of One Thousand Twenty-Eight Dollars and Fifty-Seven Cents ($1,028.57), payable to John Zells, and

(c)   Payment in the amount of One Thousand Three Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($1,357.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

_____
EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:    EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:    EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:    In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:    EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

JZ
EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.5:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

Section 6.6:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

EMPLOYEE'S Initials

Section 6.7:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.8:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.9:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.10:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.11:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.12:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.13:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.14:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 5

Section 6.15: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/9/04

JOHN ZELLS        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

    John Chandler        Date:

    Corporate Secretary, Equifax Inc. and
    Equifax eMarketing Solutions, Inc. f/k/a
    Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 6**

Section 6.15: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/9/04
JOHN ZELLS      Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____   9/22/04
John Chandler      Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA               )
                               )
COUNTY OF Broward              )

Before me, the undersigned notary public, on this date personally appeared JOHN ZELLS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 11 day of August, 2004.

Carrie McLaughlin

Notary Public in and for
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification·

FL Drivers License
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                                      **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) KOBI CHUKRAN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 64 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Two Thousand Two Hundred Eighty-Five Dollars and Seventy-One Cents ($2,285.71), payable to Kobi Chukran, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of One Thousand Seven Hundred Fourteen Dollars and Twenty-Nine Cents ($1,714.29), payable to Kobi Chukran, and

(c)    Payment in the amount of One Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($1,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

**Section 6.1**:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement. EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

**Section 6.2**:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

**Section 6.3**:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

**Section 6.4**: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

**Section 6.5**:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

**Section 6.6**:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

_____

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 5

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8-9-04

KOBI CHUKRAN          Date:

APPROVED AS TO FORM AND CONTENT:

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

      John Chandler          Date:

      Corporate Secretary, Equifax Inc. and
      Equifax eMarketing Solutions, Inc. f/k/a
      Naviant, Inc.

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8·9·04

KOBI CHUKRAN        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  9/22/04

John Chandler        Date:

Corporate Secretary, Equifax Inc. and
Equifax eMarketing Solutions, Inc. f/k/a
Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                   PAGE 6

STATE OF FLORIDA          )
                          )
COUNTY OF _Broward_       )

Before me, the undersigned notary public, on this date personally appeared **KOBI CHUKRAN**, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _15th_ day of _Sept._, 2004.



_____
Notary Public in and/or
the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

_Drivers Lic._
Type of Identification Produced

My Commission Expires:

---

SETTLEMENT AGREEMENT AND RELEASE                          PAGE 7

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) ROBERT CLOUSE, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 65 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

_EMPLOYEE'S Initials_

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYER'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Two Thousand Two Hundred Eighty-Five Dollars and Seventy-One Cents ($2,285.71), payable to Robert Clouse, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of One Thousand Seven Hundred Fourteen Dollars and Twenty-Nine Cents ($1,714.29), payable to Robert Clouse, and

(c)   Payment in the amount of One Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($1,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 2

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

---

**ARTICLE VI - Miscellaneous**

Section 6.1:    EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:    EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:    EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4: EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:    Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:    This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/10/04
ROBERT CLOUSE      Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____
     John Chandler          Date:

     Corporate Secretary, Equifax Inc. and
     Equifax eMarketing Solutions, Inc. f/k/a
     Naviant, Inc.

---

**SETTLEMENT AGREEMENT AND RELEASE**                                **PAGE 6**

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

ROBERT CLOUSE        Date:        8/10/04

**APPROVED AS TO FORM AND CONTENT:**

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:        John Chandler        Date:        9/22/04

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA        )

                              )

COUNTY OF Broward    )

      Before me, the undersigned notary public, on this date personally appeared ROBERT CLOUSE, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

      SUBSCRIBED AND SWORN TO BEFORE ME this 10 day of August, 2004.

                                          Notary Public in and for
                                        the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

FL Drivers License
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31. 2007
Bonded Thru
Atlantic Bonding Co  Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**               **PAGE 7**

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) CHRISTINE SALMON, an individual, together with her heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

This Agreement is numbered 66 of 66 agreements, each of which is being executed by an opt-in plaintiff in the lawsuit styled *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until all 66 agreements are fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

---

SETTLEMENT AGREEMENT AND RELEASE                                                    PAGE 1

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)    Payment by a single check in the amount of Four Thousand Five Hundred Seventy-One Dollars and Forty-Three Cents ($4,571.43), payable to Christine Salmon, less applicable withholding and deductions; and

(b)    Payment by a single check in the amount of Three Thousand Four Hundred Twenty-Eight Dollars and Fifty-Seven Cents ($3,428.57), payable to Christine Salmon, and

(c)    Payment in the amount of Two Thousand Seven Hundred Fifty-Seven Dollars and Fifty-Seven Cents ($2,757.57), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims she is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2: EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3: EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4: In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5: EMPLOYEE agrees and acknowledges that she has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which she is entitled as a result of her employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of herself and her attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than her attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that she will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if she discloses any such information to her tax preparers or attorneys, or as otherwise required by law, she will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom she discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that she will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of her employment and the position she occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that she will not permit herself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to her employment or separation of employment from EMPLOYER.

Section 6.4:   EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:  EMPLOYEE acknowledges that she was advised to and did consult with an attorney before signing this Agreement.  EMPLOYEE represents and warrants that she is of lawful age; that she has been given sufficient time to consider the Agreement; that she has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that she is signing of her own free will with the intent of being bound by the Agreement.

Section 6.11:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____  8/10/04

CHRISTINE SALMON          Date:

**APPROVED AS TO FORM AND CONTENT:**

_____

Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____

John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

Section 6.16:  This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement.  EMPLOYEE has twenty-one (21) days from the date she receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER.  Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement.  During this seven (7) day period, EMPLOYEE may revoke this Agreement.  If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   8/10/04
CHRISTINE SALMON        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By:_____   9/22/04
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

STATE OF FLORIDA )
)
COUNTY OF _Broward_ )

    Before me, the undersigned notary public, on this date personally appeared CHRISTINE

SALMON, known to me to be the person whose name is subscribed to the foregoing instrument,

and acknowledged that she has executed the same for the purposes and consideration herein

expressed.

    SUBSCRIBED AND SWORN TO BEFORE ME this _10_ day of _August_,

2004.

                              Notary Public in and for
                              the State of Florida

Signer identified by:

☐ Personal Knowledge; or

☑ Production of Identification

 FL Drivers License
Type of Identification Produced

My Commission Expires:

Carrie McLaughlin
Commission #DD198840
Expires: Mar 31, 2007
Bonded Thru
Atlantic Bonding Co Inc

---

**SETTLEMENT AGREEMENT AND RELEASE**                               **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JOHN BAGNASCO, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling **all** matters of fact and things in controversy between EMPLOYEE and EMPLOYER, including, but not limited to, any claims for relief that were made or could have been made by EMPLOYEE in the matter of *Richard Exposito v. Equifax Inc. and Naviant, Inc.,* in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until each and every agreement with each and every opt-in Plaintiff in the Lawsuit is fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)   Payment by a single check in the amount of Four Thousand Three Hundred Eighty-Eight Dollars and Fifty-Seven Cents ($4,388.57), payable to John Bagnasco, less applicable withholding and deductions; and

(b)   Payment by a single check in the amount of Three Thousand Two Hundred Ninety-One Dollars and Forty-Three Cents ($3,291.43), payable to John Bagnasco, and

(c)   Payment in the amount of One Thousand Nine Hundred Twenty Dollars and Zero Cents ($1,920.00), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein.  Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the

EMPLOYEE'S Initials

Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees. EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

Section 6.17: EMPLOYEE is hereby advised and encouraged to consult with an attorney before signing this Agreement. EMPLOYEE has twenty-one (21) days from the date he receives this Agreement in which to consider and accept this Agreement by signing and returning this Agreement to Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, counsel for EMPLOYER. Having had the opportunity to obtain the advice of legal counsel to review, comment upon, and redraft this agreement, EMPLOYEE agrees that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

Section 6.18: All parties acknowledge that this Agreement will not become effective or enforceable until seven (7) days from the date that EMPLOYEE signs this Agreement. During this seven (7) day period, EMPLOYEE may revoke this Agreement. If EMPLOYEE or EMPLOYEE'S attorney does not advise Steven A. Siegel, Esquire, 450 East Las Olas Boulevard, Suite 800, Fort Lauderdale, Florida 33301, in writing within such seven (7) day period of his intent to revoke this Agreement, this Agreement will become effective and enforceable upon the expiration of the seven (7) days.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   10/5/04
JOHN BAGNASCO        Date:

**APPROVED AS TO FORM AND CONTENT:**

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  10/12/2004
John Chandler        Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

STATE OF _New Jersey_      )
                        )
COUNTY OF _Somerset_      )

Before me, the undersigned notary public, on this date personally appeared JOHN BAGNASCO, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this 5th day of October, 2004.

**MALEGNI ABREU**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 3/20/2007**

_____
Notary Public in and for
the State of _New Jersey_

Signer identified by:

☐ Personal Knowledge; or

☐ Production of Identification

_____
Type of Identification Produced

My Commission Expires:

---

**SETTLEMENT AGREEMENT AND RELEASE**                                    **PAGE 7**

# SETTLEMENT AGREEMENT AND RELEASE

## ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) JASON BRAUNSTEIN, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

## ARTICLE II - Purpose

The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling **all** matters of fact and things in controversy between EMPLOYEE and EMPLOYER, including, but not limited to, any claims for relief that were made or could have been made by EMPLOYEE in the matter of *Richard Exposito v. Equifax Inc. and Naviant, Inc.*, in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until each and every agreement with each and every opt-in Plaintiff in the Lawsuit is fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

## ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a current employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

---

Section 3.4:   By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:   The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

(a)     Payment by a single check in the amount of Six Thousand Eight Hundred Fifty-Seven Dollars and Fourteen Cents ($6,857.14), payable to Jason Braunstein, less applicable withholding and deductions; and

(b)     Payment by a single check in the amount of Five Thousand One Hundred Forty-Two Dollars and Eighty-Six Cents ($5,142.86), payable to Jason Braunstein, and

(c)     Payment in the amount of Three Thousand Dollars and Zero Cents ($3,000.00), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:   This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:   For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE  hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act

EMPLOYEE'S Initials

of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the

EMPLOYEE'S Initials

amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law. This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law. EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement. EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE. In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages. attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.5:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

Section 6.6:   The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.7:   EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.8:   EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

EMPLOYEE'S Initials

Section 6.9:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.10:  In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.11:  Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.  Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.12:  If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.  In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.  In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.13:  The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.  No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.14:  This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

Section 6.15:  This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_____   10/6/04
JASON BRAUNSTEIN        Date:

APPROVED AS TO FORM AND CONTENT:

_____
Joseph M. Maus, Esq.
Attorney for Plaintiff

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 5

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _____  10/13/2004

John Chandler          Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF _NEW YORK_ )
)
COUNTY OF _NEW YORK_ )

Before me, the undersigned notary public, on this date personally appeared JASON BRAUNSTEIN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _6th_ day of October, 2004.

_____
Notary Public in and for
the State of _NEW YORK_

Signer identified by:

☐ Personal Knowledge; or

☒ Production of Identification

_ID & ACCOUNT VERIFICATION_
Type of Identification Produced

My Commission Expires:

JERRY PASINI
Notary Public, State of New York
No.01PA6108612
Qualified in QUEENS County
COMMISSION EXPIRES: 04/19/2008

---

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 7

## SETTLEMENT AGREEMENT AND RELEASE

### ARTICLE I - Preamble

This Settlement Agreement and Release (the "Agreement") is entered into by and between (a) SEAN GATELY, an individual, together with his heirs, agents, legal representatives, successors, and assigns (hereinafter, "EMPLOYEE") and (b) EQUIFAX INC. and EQUIFAX eMARKETING SOLUTIONS, INC. f/k/a NAVIANT, INC., corporations, together with their predecessors, successors, affiliates, subsidiaries, parent companies, insurers, subcontractors, contractors, shareholders, any other related entities including but not limited to EDirect, Inc., Equifax Information Services, LLC and any other entity with whom Equifax Inc. and/or Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. was a joint employer of EMPLOYEE at any time or who may otherwise be legally bound to pay wages to EMPLOYEE through the period of this Release (hereinafter, "EMPLOYER").

### ARTICLE II - Purpose

The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling **all** matters of fact and things in controversy between EMPLOYEE and EMPLOYER, including, but not limited to, any claims for relief that were made or could have been made by EMPLOYEE in the matter of *Richard Exposito v. Equifax Inc. and Naviant, Inc.*, in the United States District Court for the Southern District of Florida, Case No. 04-80099-CIV-HURLEY (hereinafter the "Lawsuit"). This Agreement is not binding or effective unless and until each and every agreement with each and every opt-in Plaintiff in the Lawsuit is fully executed and enforceable and each agreement is approved by the Court. The rights and obligations set forth in this document are for the purpose of conclusively resolving and settling all matters of fact and things in controversy between EMPLOYER and EMPLOYEE, including, but not limited to, any claims for relief that could have been made in the Lawsuit or any other court or legal forum whatsoever as of the effective date hereof.

### ARTICLE III - Facts

EMPLOYER and EMPLOYEE (the "Parties") stipulate to certain facts that relate to disputed claims and controversies between them as follows:

Section 3.1:   EMPLOYEE is a former employee of Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc. who has opted into the Lawsuit.

Section 3.2:   EMPLOYER denies any and all alleged violations of law, and any and all liability for the claims of EMPLOYEE alleged in the Lawsuit or otherwise.

Section 3.3:   The terms of this Agreement are the product of negotiations between the parties hereto, and the parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

EMPLOYEE'S Initials

Section 3.4:    By entering into this Agreement, EMPLOYER and EMPLOYEE stipulate and agree that, among other things, they have resolved and settled any and all claims that were or could have been made to date by EMPLOYEE in any legal forum, or otherwise arising out of EMPLOYEE'S employment with EMPLOYER, including but not limited to all claims that were or could have been brought in the Lawsuit.  EMPLOYER and EMPLOYEE further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract or any other legal obligation whatsoever.  This Agreement is entered into by EMPLOYER and EMPLOYEE solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims.

## ARTICLE IV - Consideration

Section 4.1:    The total consideration given by EMPLOYER to EMPLOYEE under this Agreement consists of the following:

> (a)    Payment by a single check in the amount of Nine Hundred Fourteen Dollars and Twenty-Nine Cents ($914.29), payable to Sean Gately, less applicable withholding and deductions; and

> (b)    Payment by a single check in the amount of Six Hundred Eighty-Five Dollars and Seventy-One Cents ($685.71), payable to Sean Gately, and

> (c)    Payment in the amount of Four Hundred Dollars and Zero Cents ($400.00), payable to Joseph A. Maus, P.A. and Charles H. Bechert, III, P.A.

Section 4.2:    This consideration is intended to satisfy any and all claims of EMPLOYEE for unpaid wages and overtime, and any and all other claims, as recited herein. Additionally, EMPLOYEE acknowledges that this consideration is full and complete payment for all overtime, liquidated damages and back wages that EMPLOYEE claims he is owed.

## ARTICLE V - Release and Covenants Not to Sue

Section 5.1:    For and in consideration of the required acts and promises set forth in the text of this Agreement, EMPLOYEE hereby knowingly and voluntarily releases and discharges EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which EMPLOYEE has or might have as a result of, or in any way connected with EMPLOYEE'S employment or separation of employment with EMPLOYER, including but not limited to wage or benefit-related claims including without limitation, claims for adjusted compensation, bonus, severance, commissions, vacation, overtime pay or violations of the Fair Labor Standards Act, and including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Age Discrimination in Employment Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act

EMPLOYEE'S Initials

of 1992, as amended, the Florida Whistleblower Act, § 448.101 *et seq.*, Fla. Stat., the Florida Workers' Compensation Retaliation Statute, § 440.205, Fla. Stat., and all other local, state or federal laws relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, wrongful, retaliatory or constructive discharge, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, outrageous conduct, negligence, negligent misrepresentation or concealment, retaliation, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which EMPLOYEE has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement.  All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

Section 5.2:   EMPLOYEE agrees to immediately dismiss the Lawsuit and all claims therein with prejudice to EMPLOYEE'S right to refile same or any part thereof, by executing an Agreed Stipulation and Order of Dismissal with Prejudice.

Section 5.3:   EMPLOYEE and EMPLOYER shall bear their respective costs and expenses, including attorneys' fees.  EMPLOYEE agrees not to reurge, reinstitute, or refile any of those claims asserted in the Lawsuit or the otherwise released claims in any court or other legal forum whatsoever, nor shall any other court actions or other legal proceedings of any type seeking monetary recovery for EMPLOYEE be filed that are connected in any fashion to EMPLOYEE'S employment  with or separation of employment from EMPLOYER, or for any personal injuries sustained, or by virtue of or related to any other fact(s), act(s), or event(s) occurring in whole or in part on or before the effective date of this Agreement.

Section 5.4:   In addition, but not as a limitation, EMPLOYEE specifically agrees: (A) that any claims EMPLOYEE has or might have pertaining to EMPLOYER'S employment practices arising under any municipal, state, or federal law as of the date of this agreement are completely settled; and (B) that EMPLOYEE will withdraw any pending complaints, charges, claims, or causes of action that may have been filed against EMPLOYER with any municipal, state, or federal government agency or court.

Section 5.5:   EMPLOYEE agrees and acknowledges that he has received all salary, wages, overtime payments, commissions, in-kind incentives and other monetary compensation and employee benefits to which he is entitled as a result of his employment with EMPLOYER.

EMPLOYEE'S Initials

## ARTICLE VI - Miscellaneous

Section 6.1:   EMPLOYEE agrees, on behalf of himself and his attorneys, that all terms and conditions contained herein are to remain strictly confidential and cannot be disclosed to anyone other than his attorneys and spouse.  The confidentiality of the terms and conditions contained herein is part of the consideration inducing EMPLOYER to enter into this Agreement. EMPLOYEE agrees that he will not disclose or publish or cause to be disclosed or published the amount of, existence of, or content of the terms of this Agreement, or the terms of settlement, or the discussions and circumstances preceding this Agreement, or the details of the dispute that forms the basis of this Agreement, to any entity or person whatsoever, except as otherwise required by law.  This paragraph shall not limit EMPLOYEE'S right to disclose the existence of this Agreement, including its terms and amount, to their tax preparers and attorneys, or as otherwise required by law.  EMPLOYEE agrees that if he discloses any such information to his tax preparers or attorneys, or as otherwise required by law, he will advise that person or entity of the terms of the confidentiality provision of the Agreement.  EMPLOYEE agrees that if any such person or entity to whom he discloses any such information disseminates or discloses that information to any third person, unless required by law, such dissemination or disclosure shall be treated as a breach of this provision by EMPLOYEE.  In the event EMPLOYEE breaches this Agreement, EMPLOYER has the right to seek all available remedies, including but not limited to, injunctive relief, damages, attorneys' fees and costs.

Section 6.2:   EMPLOYEE agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm or attempt to harm the reputation, goodwill or commercial interest of EMPLOYER to any persons, including but not limited to current or former customers and employees, or members of the media.  EMPLOYER agrees to provide EMPLOYEE with a neutral job reference, identifying only that EMPLOYEE was employed by EMPLOYER, the dates of his employment and the position he occupied.  Any such reference request must be directed to the attention of EMPLOYER'S Vice President of Human Resources.

Section 6.3:   EMPLOYEE agrees that he will not permit himself to be a member of any class or group seeking relief against EMPLOYER in any matter relating to his employment or separation of employment from EMPLOYER.

Section 6.4:  EMPLOYEE expressly waives and disclaims any right to reinstatement or reemployment with EMPLOYER, and agrees never to seek employment with EMPLOYER at any time in the future.

Section 6.5:   Upon entry of the Order of Dismissal, the doctrines of *res judicata* and collateral estoppel shall apply to all claims of EMPLOYEE with respect to all issues of law that were raised or could have been raised in the Lawsuit.

Section 6.6:   This document contains the entire agreement between the Parties relating to the issues discussed herein, and no modifications or amendments to any of the terms, conditions, or provisions hereof may be enforced unless evidenced by a subsequent written agreement executed by all Parties hereto.

EMPLOYEE'S Initials

Section 6.7:    The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

Section 6.8:    EMPLOYEE represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

Section 6.9:    EMPLOYEE shall be liable to EMPLOYER for any attorneys' fees, expert witness fees, and costs of court incurred by EMPLOYER, in the event that EMPLOYEE files suit, opts-in to or brings any other legal proceedings against EMPLOYER on any claim that is released hereunder.

Section 6.10:   EMPLOYEE acknowledges that he was advised to and did consult with an attorney before signing this Agreement.   EMPLOYEE represents and warrants that he is of lawful age; that he has been given sufficient time to consider the Agreement; that he has read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and that he is signing of his own free will with the intent of being bound by the Agreement.

Section 6.11:   In the event either party hereunder initiates litigation to enforce this Agreement, it is mutually agreed that venue of any such litigation shall be proper only in Palm Beach County, Florida.

Section 6.12:   Each party has been given an opportunity to participate in the drafting and preparation of this Agreement.   Therefore, in any construction to be made of this Agreement, the same shall not be construed against any party.

Section 6.13:   If any provisions of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be fully severable.   In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof.   In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

Section 6.14:   The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement.   No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 6.15:   This Agreement is executed in multiple originals, any of which may be used as evidence hereof.

EMPLOYEE'S Initials

Section 6.16: This Agreement is dated as of the date first written and is effective as provided herein.

IN WITNESS WHEREOF, the parties hereto have executed this Release, Covenant Not to Sue, and Settlement Agreement on the dates set forth in the acknowledgments shown below.

_Sean Gately_   10/10/2004
SEAN GATELY     Date

**APPROVED AS TO FORM AND CONTENT:**

_Joseph M. Maus_
Joseph M. Maus, Esq.
Attorney for Plaintiff

**Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.**

By: _John Chandler_  10/13/2004
John Chandler     Date:

Corporate Secretary, Equifax Inc. and Equifax eMarketing Solutions, Inc. f/k/a Naviant, Inc.

SETTLEMENT AGREEMENT AND RELEASE                                    PAGE 6

STATE OF _New York_ )
                                              )
COUNTY OF _Nassau_ )

Before me, the undersigned notary public, on this date personally appeared SEAN GATELY, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he has executed the same for the purposes and consideration herein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME this _10th_ day of October, 2004.

_[signature]_

Notary Public in and for
the State of _New York_

Signer identified by:

☐ Personal Knowledge; or

☐ Production of Identification

_License_

Type of Identification Produced

My Commission Expires: _9/9/2006_

MILDRED ALAYON
Notary Public - State of New York
No. 01AL6080135
Qualified in Nassau County
My Commission Expires 09/09/2006

---

SETTLEMENT AGREEMENT AND RELEASE                                          PAGE 7